CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* DAWSON.

[Cite as *Cleveland Metro. Bar Assn. v. Dawson,*

**124 Ohio St.3d 22, 2009-Ohio-5959.**]

*Attorney misconduct, including neglecting an entrusted legal matter and failing to advise client that attorney lacks professional-liability insurance — Six-month suspension.*

(No. 2009-1115 — Submitted August 11, 2009 — Decided November 19, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 08-072.

_____

**O'DONNELL, J.**

{¶ 1}  We admitted respondent, William Dawson of Cleveland, Ohio, Attorney Registration No. 0073025, to the practice of law in Ohio in 2000.  The Board of Commissioners on Grievances and Discipline recommends that we now suspend his license to practice law for six months, but stay the suspension on conditions, including monitored probation.  The board's recommendation is based on findings that respondent committed professional misconduct, in that he failed to comply with discovery requests, to oppose a motion for summary judgment, to respond to a motion to deem admitted the statements propounded in requests for admissions, and to timely file a notice of appeal.  We accept the board's findings that respondent violated ethical standards incumbent on Ohio lawyers.  However, for the reasons that follow, we reject the board's recommended sanction and instead impose a six-month actual suspension from the practice of law.

{¶ 2}  Relator, Cleveland Metropolitan Bar Association, charged respondent in a two-count complaint with violations of the Disciplinary Rules of the former Code of Professional Responsibility, including DR 1-104(A) (requiring

a lawyer to advise a client that he lacks professional-liability insurance), 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on a lawyer's fitness to practice law), and 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter). A three-member panel of the board heard the case, accepted respondent's stipulations to having committed the stated misconduct, made findings of fact and conclusions of law, and recommended the six-month suspension and conditional stay. The Board of Commissioners on Grievances and Discipline adopted the panel's findings of misconduct and the recommended sanction.

{¶ 3} The parties have not objected to the board's report.

## Misconduct

*Count I — The DR 1-104(A) and 6-101(A)(3) Violations*

{¶ 4} Upon graduating from law school in 2000, respondent accepted employment with a large law firm in its litigation department. In 2002, however, he entered solo practice. Thereafter, he agreed to take over a number of cases from an attorney who was facing disciplinary proceedings for professional misconduct.

{¶ 5} In one of those cases, respondent agreed to defend two clients in a pending age-discrimination lawsuit. Respondent, however, never provided his clients with the required notice that he did not carry professional-liability insurance. He entered his appearance as defense counsel in August 2002, and at a final pretrial conference the following month, requested a continuance of the trial date and an extension of time to complete discovery. The court continued the trial date until late January 2003.

{¶ 6} Respondent then neglected the case. Thinking that he would be able to resolve the discovery issues and settle the case, respondent failed to respond to the plaintiff's November 2002 motion for partial summary judgment, and, as a result, the court granted the unopposed motion for partial summary

judgment. Also in that case, respondent failed to reply to the plaintiff's motion to deem as admitted the statements in the plaintiff's requests for admissions. The court also granted this unopposed motion. Thereafter, the trial court overruled respondent's motion to reconsider the order granting partial summary judgment, noting respondent's failure to timely respond to the requests for admissions and to the motion seeking to deem as admitted the statements in the requests for admissions.

{¶ 7} Because respondent failed to respond to the plaintiff's requests for discovery, the court canceled the scheduled trial and held a hearing on a pending motion for default. The court granted a default judgment in March 2003, awarding the plaintiff damages of $184,675 – $130,900 in compensatory damages, $50,000 in punitive damages, and $3,775 in attorney fees. Respondent further failed to timely appeal that default judgment. The parties later settled the case for $27,000.

{¶ 8} Because of respondent's failings, the board found the evidence clear and convincing that respondent had violated DR 1-104(A) and 6-101(A)(3). We accept these findings of misconduct.

*Count II —The DR 1-102(A)(6) Violation*

{¶ 9} In early January 2004, the clients involved in Count I sued respondent for legal malpractice. In early November of that year, respondent and his former clients agreed to a settlement, which was reduced to judgment, requiring respondent to pay the former clients $17,000 if he paid on time and $22,000 if he defaulted. Respondent agreed to pay in installments — $5,000 by November 15, 2004, $6,000 by May 15, 2005, and $6,000 by November 15, 2005. However, respondent defaulted after paying only one installment. He then agreed to make monthly payments of $500 commencing on August 1, 2005, to satisfy his outstanding obligation, but made only one payment under that agreement.

**{¶ 10}** By mid-September 2005 respondent's financial situation had worsened. Facing foreclosure on three rental properties and a significantly reduced income due to a decrease in public-defender appointments, respondent filed for Chapter 7 voluntary bankruptcy and discharged his former clients' judgment.

**{¶ 11}** The board found that respondent had entered into the settlements with his former clients in good faith and without any intent to avoid the obligation through bankruptcy. Nevertheless, the board found clear and convincing evidence that respondent's failure to satisfy the judgment adversely reflected on his fitness to practice law and violated DR 1-102(A)(6). We accept this finding.

## Sanction

**{¶ 12}** In recommending a sanction for respondent's misconduct, the board weighed the aggravating and mitigating factors of his case. The board cited respondent's suspension from practice in December 2005 for failing to comply with attorney-registration requirements as an aggravating factor.[1] In mitigation, the board found that respondent has no prior disciplinary record, did not act with any selfish or dishonest motive, made free and full disclosure to relator, and cooperated throughout these proceedings. See BCGD Proc.Reg. 10(B)(2)(a), (b), and (d).

**{¶ 13}** The parties proposed as the appropriate sanction for respondent's misconduct a six-month suspension of his license to practice law with the entire period stayed on the conditions that he (1) commit no further violations of the applicable ethical standards, (2) complete six hours of continuing legal education in time management or law-office management as approved by relator, and (3)

---

1. See *In re Atty. Registration Suspension, Dawson*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671. The board also noted that respondent has been issued monetary sanctions for failing to comply with continuing-legal-education requirements; however, Gov.Bar R. X(5)(C) prohibits consideration of such sanctions in disciplinary proceedings.

successfully complete a one-year monitored probation under the auspices of an attorney appointed by relator. The panel and board accepted that proposal.

{¶ 14} In adopting the panel's report, the board compared this sanction to the sanction imposed in *Toledo Bar Assn. v. Hales*, 120 Ohio St.3d 340, 2008-Ohio-6201, 899 N.E.2d 130. The board determined that respondent's conduct warranted a sanction less severe than the sanction this court ordered in *Hales*, explaining:

{¶ 15} "Hales was sanctioned because he (1) mishandled and lost his client's medical malpractice case due to his inexperience; (2) failed to notify his insurance carrier of the client's legal malpractice claim, thus causing the insurer to deny coverage; and (3) [by declaring bankruptcy], prevented his client from collecting on a $280,000.00 default judgment she obtained [against him for legal malpractice] * * *.

{¶ 16} "Hales filed a Chapter 7 bankruptcy petition for discharge of his personal debts in February 2005. The Bankruptcy Court treated his filing as a 'no-asset case,' and as such, the failure to list the potential judgment did not prevent discharge of the debt. In mid-May 2005, the Bankruptcy Court discharged all of Hales's indebtedness.

{¶ 17} "Hales's client sued him for malpractice in June of 2005. Respondent Hales did not file an answer in the legal-malpractice case and the Court awarded his client $280,000.00 in damages.

{¶ 18} "At some point, Hales also filed a Chapter 13 bankruptcy petition listing the malpractice claim. The end result was Hales's client was unable to recover anything from him because of the discharge in bankruptcy and his failure to notify his liability insurer of her claim.

{¶ 19} "Hales was given a two-year suspension from the practice of law with 18 months stayed. Citing *Cleveland Bar Assn. v. Gay* (2002), 94 Ohio St.3d

404, [763 N.E.2d 585], the Supreme Court did not order Hales to make restitution for the debt discharged in bankruptcy.

**{¶ 20}** "The instant case differs from *Hales* in that [respondent's] clients did not suffer as much harm and Respondent in this case entered into the settlement with his clients in good faith and did not intend to discharge the obligation in bankruptcy."

**{¶ 21}** While we agree with the board's determination that respondent's conduct warrants a sanction less severe than that imposed in *Hales*, we note that the sanction imposed in *Hales* was more than a six-month suspension. It was a two-year suspension, with 18 months stayed upon conditions. Id., 120 Ohio St.3d 340, 2008-Ohio-6201, 899 N.E.2d 130, ¶ 26.

**{¶ 22}** In *Butler Cty. Bar Assn. v. Schoonover*, 105 Ohio St.3d 472, 2005-Ohio-2816, 828 N.E.2d 1007, we imposed a six-month suspension stayed upon conditions for violations of the same disciplinary rules that respondent has been found to have violated. In *Schoonover*, the attorney accepted $350 from a couple to establish a guardianship for the husband's uncle but did not initiate the proceedings before the uncle's death several months later. Id. at ¶ 3-7. Despite the clients' request for a refund, the attorney waited more than one and a half years to return their money. Id. at ¶ 8. As in this case, the relator's investigation revealed that the attorney did not have malpractice insurance and that he had failed to advise his clients of that fact. Id. at ¶ 9.

**{¶ 23}** In *Schoonover*, there were no aggravating factors. Id. at ¶ 12. However, there were mitigating factors, including the death of the attorney's mother and his subsequent medical treatment for anxiety. Id. at ¶ 11. Moreover, the board and this court noted that the attorney did not financially harm his clients and made restitution. Id. at ¶ 12.

**{¶ 24}** In contrast, respondent's neglect here resulted in a $184,675 judgment against his clients, who were able to later settle that obligation for

$27,000. Although respondent agreed to pay his former clients $22,000, he paid them a total of only $5,500 before he defaulted on his obligation, and he subsequently discharged the remainder of that obligation in bankruptcy.

**{¶ 25}** We acknowledge that respondent did not act with any selfish or dishonest motive, but we conclude that his conduct warrants a more severe sanction than that recommended by the board. Accordingly, respondent is suspended from the practice of law in Ohio for six months. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Reminger Co., L.P.A., Alan B. Parker, and Gary H. Goldwasser; and K. Ann Zimmerman, for relator.

Bricker & Eckler, L.L.P., and Alvin E. Mathews Jr., for respondent.

_____